GLENFIELD MACHINE AND TOOL COMPANY, A CO-PARTNERSHIP AS COMPOSED OF GEORGE F. McCALL, JAMES McCALL, PATRICK CLARK, PETER McCALL, JOHN CLARK, AND JOHN McCALL, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

GLENFIELD MACHINE AND TOOL COMPANY, A CO-PARTNERSHIP AS COMPOSED OF GEORGE F. McCALL, JAMES McCALL, PATRICK CLARK, PETER McCALL, AND JOHN CLARK, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket Nos. 720-R, 721-R. Promulgated January 10, 1951.

*Charles P. Nugent, Esq.*, for the petitioners.
*Frederick N. Curley, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The War Contracts Price Adjustment Board determined that Glenfield Machine and Tool Company, (Docket No. 720-R), hereinafter referred to as the first partnership, realized excessive profits during the period from January 1, 1945, to February 28, 1945, in the amount of $25,000, and that Glenfield Machine and Tool Company, (Docket No. 721-R), hereinafter referred to as the second partnership, realized excessive profits in the principal amount of $50,000.

The sole question for decision is whether or not the first and second partnerships are exempt from renegotiation under the provisions of section 403 (c) (6)[1] of the Renegotiation Act (section 403 of the Sixth Supplemental National Defense Appropriation Act of 1942 as amended by the Revenue Act of 1943).

All the facts have been stipulated and they are so found.

The first partnership was organized in April 1942. It was doing business on January 1, 1945, and continued in operation until February 28, 1945, when one of the partners withdrew from the partnership. The remaining partners, on March 1, 1945, formed the second

---

[1] Sec. 403 (c).

    *     *     *     *     *     *     *

(6) This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, whether such contracts or subcontracts were made on, prior to, or after the date of the enactment of the Revenue Act of 1943, and whether or not such contracts or subcontracts contain the provisions required under subsection (b), unless (A) the contract or subcontract provides otherwise pursuant to subsection (i), or is exempted under subsection (i), or (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts (including those described in clause (A), but excluding subcontracts described in subsection (a) (5) (B)) do not exceed $500,000 and under subcontracts described in subsection (a) (5) (B) do not exceed $25,000 for such fiscal year. If such fiscal year is a fractional part of twelve months, the $500,000 amount and the $25,000 amount shall be reduced to the same fractional part thereof for the purposes of this paragraph.

partnership, which is involved in Docket No. 721-R, to continue the existing business. On April 23, 1945, one of the partners of the second partnership died. Shortly after that time the remaining partners formed another partnership (hereinafter referred to as the third partnership), which continued in business through December 31, 1945.

The first partnership filed a "Final" partnership return of income covering the period from January 1 to February 28, 1945. It is agreed by the parties that if the first partnership is subject to renegotiation within the meaning of section 403 (c) (6) of the Renegotiation Act, *supra*, it realized renegotiable income during the period from January 1 to February 28, 1945, in the amount of $192,290.

The second partnership filed a "First and Final" partnership return of income covering the period from March 1 to May 23, 1945. It is agreed that if the second partnership is subject to renegotiation within the meaning of section 403 (c) (6), it realized renegotiable income in the amount of $304,208 during the period from March 1 to May 23, 1945.

The third partnership had renegotiable income to December 31, 1945, in the amount of $117,440.

It is further agreed that if the question for decision should be decided for the respondent, the first partnership realized excessive profits within the meaning of the Renegotiation Act, in the principal amount of $25,000, and the second partnership realized excessive profits in the principal amount of $50,000.

Petitioners' position that they are not subject to renegotiation within the meaning of section 403 (c) (6) is based upon the reasoning that dissolution alone does not effect a termination of the respective partnerships, that there must be a winding up and termination to establish fiscal years ending on February 28, 1945, and May 23, 1945, as the basis for the renegotiation of the respective partnerships. There never was such winding up and termination here, the petitioners contend, and

Accordingly, since the "first" partnership's fiscal year legally ended December 31, 1945, it was a legal entity for a full twelve months and Section 403 (c) (6) of the Act is inapplicable. Petitioners' business, known as the "first partnership," did not have sales in excess of the $500,000 "floor" as provided for by the Act nor is the fractional part provision of said section of the Act applicable.

Likewise, since the "second" partnership's fiscal year legally ended either December 31, 1945 or February 28, 1946, as could be elected under the Revenue Act, it too was a legal entity for twelve months and Section 403 (c) (6) of the Act is inapplicable. Petitioners' business, known as the "second partnership," did not have sales in excess of $500,000 as provided for by the Act nor is the fractional part provision of said section of the Act applicable.

The respondent, on the other hand, argues that

* * * Section 403 (c) (6) of the Renegotiation Act requires renegotiable sales of only a *pro rata* part of the $500,000 where a fiscal year is less than twelve months; and that in the instant cases the fiscal years of the first and second partnerships were less than twelve months.

Under respondent's theory such pro rata part of the $500,000 is $83,333.34 (2/12ths of $500,000) for the first partnership, and $115,-068.24 (84/365ths of $500,000) for the second partnership.

It will be noted that section 403 (c) (6) provides that if a fiscal year of any contractor is a fractional part of twelve months, the $500,000 amount should be reduced to the same fractional part thereof for the purposes of such section. The phrase "fiscal year" of section 403 (c) (6) is important to the decision of this case. That phrase is defined in section 403 (a) (8) of the Renegotiation Act as follows:

(8) The term "fiscal year" means the taxable year of the contractor or subcontractor under Chapter 1 of the Internal Revenue Code.

Chapter 1 of the Internal Revenue Code in section 48 (a) defines "taxable year" as follows:

SEC. 48. DEFINITIONS.
When used in this chapter—
(a) TAXABLE YEAR.—"Taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. "Taxable year" means, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made.

As we have pointed out before, the first partnership made and filed what it designated a "Final" partnership return of income for the period beginning January 1, 1945, and ending February 28, 1945, and the second partnership filed what it designated a "First and Final" return for the fiscal year beginning March 1, 1945, and ending May 23, 1945. So far as the record shows, neither partnership had any income or activities winding up their affairs or any other function after the ending dates shown on the respective returns above mentioned. It is thus apparent, so far as the record is concerned, that both partnerships were not only dissolved on those respective ending dates, but were also wound up and terminated. See *Anne Jacobs*, 7 T. C. 1481.

Petitioners seek to support their position that the partnerships were not terminated by an alleged order secured by the United States in a bankruptcy proceeding involving the third partnership. Petitioners did not adduce any evidence in any respect concerning such proceeding, and we can not take judicial notice of either the proceeding or any orders procured by the United States during its pendency. Petitioners' argument on that point, therefore, must fail. See *B. F. Edwards*, 39 B. T. A. 735.

Since under the stipulation of facts the renegotiable sales of both partnerships are greater than the pro rata statutory amounts which are set forth above, we hold that the petitioners are subject to renego-

tiation. And in accordance with the stipulation of the parties, we further hold that the first partnership realized excessive profits for the period from January 1 to February 28, 1945, in the amount of $25,000, and that the second partnership realized excessive profits for the period from March 1 to May 23, 1945, in the amount of $50,000.

Orders will issue in accordance herewith.